OPINION
{¶ 1} Defendant Melvin Taylor appeals from his convictions and sentence for carrying a concealed weapon and possession of cocaine, which was entered on his plea of no contest after his motion to suppress evidence was overruled.
 {¶ 2} Defendant was indicted on one count of possession of crack cocaine, more than one but less than five grams, in violation of R.C.2925.11, and carrying a concealed weapon, in violation of R.C. 2923.12. Defendant filed a motion to suppress, arguing that the evidence supporting the charges were the product of an unlawful search and seizure.
 {¶ 3} The trial court overruled his motion and Defendant entered a plea of no contest. Based on his plea, the trial court convicted him on both counts and imposed a sentence including five years of supervision. Defendant filed a timely notice of appeal.
Assignment of Error
 {¶ 4} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 5} When considering a motion to suppress, the trial court assumes the role of the trier of fact and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v.Retherford (1994), 93 Ohio App.3d 586. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 6} On November 30, 2003, at approximately 3:00 a.m., Dayton Police Officers arrived at an apartment building on Mumma Ave to serve an unrelated arrest warrant on an unrelated individual. As they approached the building, the officers saw Defendant open the back door to the apartment building, look at the police officers, and then shut the door to avoid them. One officer was posted in the rear of the building while three others proceeded to the second floor apartment. While the officers were in the apartment, someone was heard to come up the stairs in the rear of the building and then knock on the back door. Officer Saunders opened the door and found the Defendant standing in the doorway. He testified that the Defendant looked surprised to see a police officer. He shoved his right hand into the right hand pocket of his winter coat, become "fidgety," and turned away from the officer. Officer Saunders grabbed the Defendant, pulled his arms out of his coat pockets, and "guided him" back into the apartment.
 {¶ 7} Officer Saunders conducted a pat-down, discovering a hard bulge in the right hand pocket of the Defendant's thick winter coat. Defendant told him it was a cell phone and Officer Saunders replied that he was going to check. Upon reaching into Defendant's pocket, Officer Saunders discovered a cell phone and a bag containing crack cocaine. He seized the cocaine and asked the Defendant if he had any weapons. Defendant replied that he had a handgun in his waistband. That weapon was retrieved a few moments later by another officer.
 {¶ 8} Our review of the trial court's decision is a three part analysis. The first step is to determine whether the detention was unlawful; that is, whether Officer Saunders had reasonable suspicion sufficient of criminal activity. If the stop was lawful, we must determine whether Officer Saunders had reasonable suspicion to justify the pat-down search. Finally, we must determine whether in performing the search Officer Saunders was justified in reaching into the Defendant's coat pocket after feeling a "hard object" through his coat.
 {¶ 9} A stop of an individual by a law enforcement officer is a seizure for purposes of the Fourth Amendment to the U.S. Constitution.Terry v. Ohio, (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Law enforcement officers may briefly stop and/or detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. Reasonable suspicion is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause. Terry, supra.; State v.White (Jan. 18, 2002), Montgomery App. No. 18731. To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Id.
 {¶ 10} The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene, who must react to events as they unfold.State v. Andrews (1991), 57 Ohio St.3d 86. Accordingly, the court must take into consideration the officer's training and experience to understand how the situation would be viewed by an officer on the street. Id.
 {¶ 11} The trial court found that "Officer Saunders had a reasonable and articulable suspicion to support the detention and frisk based upon the numerous drug arrests that had been made in the lower apartments and Defendant's conduct when the police first approached, appearing at the back door at 3:00 a.m. and reaching into his coat and appearing `fidgety.'" We agree.
 {¶ 12} Testimony at the hearing illuminated a number of facts that could, taken as a whole, lead a reasonable police officer to believe that the Defendant was engaged in criminal activity. The neighborhood had a reputation for having a substantial amount of drug activity and posing a heightened risk to police officers. See Bobo, supra. Officer Saunders testified that he personally had been involved in numerous drug-related arrests in that particular apartment building. Furthermore, the Defendant arrived at the apartment at 3:00 a.m., looked surprised as Officer Saunders opened the door, shoved his hand into his pocket, and turned to avoid contact with the police.
 {¶ 13} We agree with the trial court that the totality of the facts and circumstances, when viewed through the eyes of a reasonable police officer on the scene, rise to the level to reasonable suspicion to justify a brief investigatory stop.
 {¶ 14} We now look to determine if Officer Saunders' pat down search of the Defendant was justified. Even though an investigatory stop and detention of Defendant was justified, it does not necessarily follow that a frisk for weapons was also warranted. State v. Lynch (June 6, 1998), Montgomery App. No. 17028; State v. Mickey (June 29, 1990), Montgomery App. No. 11582. A pat-down search for weapons requires reasonable grounds to believe that the suspect is armed and dangerous. Terry, supra. The officer need not be absolutely certain that the individual is armed, and neither must be in fear of imminent harm. Rather, the issue is whether a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. Id.
 {¶ 15} Defendant argues that merely putting his hand into his coat, acting fidgety, and turning around are not facts that would justify a pat-down search. We agree that these actions by themselves, are essentially benign. However, we are required to examine all facts as a whole when reviewing whether the trial court erred in granting a motion to suppress. Bobo, supra. Typically innocent acts, such as putting one's hands into his or her coat pocket, may justify an officer's reasonable suspicion when taken in context of the surrounding circumstances.
 {¶ 16} Here, Defendant shoved his hands into his coat pockets upon seeing a police officer. Officer Saunders instinctively grabbed Defendant's arms and pulled them from his coat pockets. Taken with the facts outlined to justify the stop, the trial court found Officer Saunders had reasonable suspicion that the Defendant had a weapon in his coat pocket. We agree with the trial court, and find that Officer Saunders was warranted in his belief that his safety or the safety of others was in danger.
 {¶ 17} Having found the stop and frisk and patdown search to be lawful, we next review whether Officer Saunders was justified in placing his hands in the Defendant's pockets and removing the bag of crack cocaine.
 {¶ 18} Officer Saunders testified that as he patted down the Defendant's thick winter coat he "felt a bulge in the upper right-hand portion of his coat. I asked him what it was. He told me it was a cell phone. I told him that I was going to check. I reached into his pocket and I felt a cell phone and what I believed to be crack cocaine — a bag of crack cocaine." (Tr. at 17).
 {¶ 19} We have held that when an officer is conducting a lawful pat-down search for weapons and discovers an object on the suspect's person which the officer, through his or her sense of touch, reasonably believes could be a weapon, the officer may seize the object as long as the search stays within the bounds of Terry. State v. Harrington (June 1, 1994), Montgomery App. No. 14146. "A search for weapons in the absence of probable cause to arrest . . . must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby . . ." Terry, 392 U.S. at 25-26, 88 S.Ct. at 1882.
 {¶ 20} It is important to emphasize that Terry does not require that the officer be absolutely convinced that the object he feels is a weapon before grounds exist to remove the object. At the same time, a hunch or inarticulable suspicion that the object is a weapon of some sort will not provide a sufficient basis to uphold a further intrusion into the clothing of a suspect.
 {¶ 21} The protective pat-down under Terry is limited in scope to this protective purpose and cannot be employed by the searching officer to search for evidence of crime. When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's "size or density," that it could be a weapon. 3 LaFave, Search and Seizure (2 Ed. 1987) 523, Section 9.4(c).
 {¶ 22} "Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its `size or density' is such that it might be a weapon. But because `weapons are not always of an easily discernible shape,' it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon `the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing,' which is most likely to occur when the suspect is wearing heavy clothing." Id. "If by touch the officer remains uncertain as to whether the article producing the bulge might be a weapon, he is entitled to remove it." State v. Harrington (June 1, 1994), Montgomery App. No. 14146 citing United States v. Oates (C.A.2, 1977), 560 F.2d 45, 62
(removal of an overstuffed wallet justified when the officer could not determine what caused the bulge by feeling it through defendant's outer clothing).
 {¶ 23} Officer Saunders felt a hard object in the same pocket into which the Defendant had shoved his hand moments earlier. His ability to determine exactly what that object was through sense of touch was impaired by the Defendant's thick winter coat. Although the Defendant told Officer Saunders that the object was only a cell phone, he was not required to place his safety at risk by relying on that assertion.
 {¶ 24} We conclude that Officer Saunders acted within the scope of Terry in reaching into defendant's pocket to retrieve the object. Through his sense of touch as well as his experience on the police force, Officer Saunders was unable to conclude that the object was not a knife or other weapon. His finding the crack cocaine was incidental to his search for weapons.
 {¶ 25} Finally, we note that the handgun found on the Defendant's person was lawfully retrieved after Defendant was placed under arrest by Officer Sanders. A custodial arrest provides the necessary justification to conduct a search of the arrestee's person and seize weapons found on the Defendant. See U.S. v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467,38 L.Ed.2d 427.
 {¶ 26} The trial court's finding that Officer Saunders' stop, frisk, and placing his hands in the Defendant's coat pocket were lawful was correct. Retherford, supra. The assignment of error is overruled.
 {¶ 27} The judgment of the trial court will be affirmed.
Donovan, J. And Young, J., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.